HUCKERT, Appellant, v. MAYNARD, Respondent.

(186 N. W. 956.)

(File No. 4959. Opinion filed March 1, 1922. Rehearing granted April 10, 1922.)

1. **Waters and Water Courses—River Water Flooding Upper Tenement, Surplus Overflowing Servient, Defendant's Embankment On Line, Causing More Inundation Above—Inconsistent Finding of No More Overflow But "Deeper" Water Above, Effect Re Damages.**

At times of flood in Sioux River, water flows therefrom through a wide slough and upon plaintiff's land, thence over part of defendant's land and on to river at lower point, thus over a course forming part of a natural drainage as defined in Thompson v. Andrews, 39 S. D. 477. Defendant, to prevent such overflow to his land, erected an embankment on the line between his and plaintiff's land, resulting in the flood waters onto plaintiff's land remaining thereon until cessation of flood, when it returns through a ditch thereon and through the slough to river; the effect being to damage or destroy plaintiff's crops, but to protect defendant's land from damage to crops; plaintiff contending this bank causes water to remain on his land longer and to greater depth than formerly, defendant denying this. A trial court finding is to effect that embankment does not cause more of plaintiff's land to be overflowed than if it were not there, but that it may make flood waters "some deeper," that it does not cause longer flooding, etc., and that no damage to plaintiff's land resulted or will result. **Held,** that the two statements—that bank does not cause more land overflow, and that it may make flood waters "some deeper," are inconsistent, since if water is deeper it must overflow more land; moreover, that it takes water longer to drain off than before bank was erected; and judgment mandatorily enjoining defendant from maintaining the embankment, is affirmed.

2. **Same—Finding That Embankment Beneficial to Defendant's Crops While Plaintiff Suffers, Sustained, But Mandatory Injunction Denied—Whether "Common Enemy" Doctrine Applicable to River Waters, Undecided.**

> Under the evidence, a finding that said embankment is bene-
> ficial to defendant during high flood, in saving his crops from
> destruction, and this after plaintiff's crops have been destroyed
> and at time when he has suffered all damage he can by reason
> of flood, is sustained; but, it appearing that practically all of
> plaintiff's land that overflows at any time is still so after water
> reaches level of defendant's land, held, that his damage is not
> sufficient to warrant mandatory injunction, which is refused.
> That, in view of said finding, it is unnecessary to consider con-
> tention that the "common enemy" doctrine applies to flood
> waters of rivers.

Appeal from Circuit Court, Union County. Hon. LOUIS L.
FLEEGER, Judge.

Action by A. Huckert, against O. R. Maynard, for a manda-
tory injunction to prevent defendant from maintaining a river
flood embankment along the dividing line between plaintiff's and
defendant's farm lands. From a judgment for defendant, and
from an order denying a new trial, plaintiff appeals. Affirmed.

*A. B. Carlson,* for Appellant.

*Thomas McInerny,* for Respondent.

(2)   To point two of the opinion, Respondent cited: Mead
v. Town of Mellette (S. D.) 101 N. W. 355; Black v. Escher
(Ia.) 173 N. W. 50; Keck v. Venghause (Ia.) 130 N. W. 773;
Way v. Roddy (Tex.) 140 S. W. 1148.

POLLEY, J.  Action for a mandatory injunction to prevent
defendant from maintaining an embankment along the dividing
line between the respective farms of plaintiff and defendant.
Findings of fact, conclusions of law, and judgment were in favor
of defendant, and plaintiff appeals.

The farms of plaintiff and defendant are situated on the
river bottom of the Big Sioux river in Union county. Defendant
owns the east half of the northwest quarter of section 15. Plain-
tiff owns all of the northeast quarter of section 15 and a small
part of the northwest quarter of section 14 lying on the west side
of the river. Both tracts of land are low and flat, and prior to
the construction of certain dikes along said river bottom both
tracts were subject to overflow from the river. The river runs
in a southwesterly direction, bounding plaintiff's land on the east,
and runs through the south half of Sec. 15 so that it is but a
short distance from the south side of plaintiff's land to the river.
Before the construction of the dikes above mentioned the flood

water from the river during freshets flowed down from the north and northeast onto and across plaintiff's land in a southwesterly direction, then onto and across defendant's land. Some years prior to the controversy between plaintiff and defendant a system of dikes was constructed along the west side of the river and to the north of plaintiff's land. The river bank along the west side of the river is high enough so that except at times of very high water no flood water reaches plaintiff's land from the east. But from a point in the southeast quarter of section 15 a slough some 20 to 40 rods wide extends from the river in a northerly direction up into plaintiff's land for a distance of 60 to 70 rods, and from the end of this slough a large drain ditch has been dug practically due north entirely across plaintiff's land. During times of excessively high water in the river the water used to back up in the slough and ditch, and spread out over practically all of plaintiff's land, and then run across defendant's land and on down the river bottom and into the river at a point lower down the stream. But the land along the boundary line between plaintiff and defendant is high enough so that by far the greater part of plaintiff's land is under water, from a few inches to several feet in depth, before any water runs over onto defendant's land. In order to protect his land and his growing crops from such overflow defendant in 1916 threw up a dike or embankment to a height of about 3 feet along the boundary line between his land and the land of plaintiff. The result of this is that when the river rises to a sufficient height the water backs up through the slough to the south of plaintiff's land into the ditch above mentioned, then spreads out over plaintiff's land, and stands there until the river goes down, when the water runs back through the ditch and slough into the river. The effect of this is to damage or destroy plaintiff's crops, but the dike thrown up by defendant prevents the water from spreading over his land, and protects his crops from damage thereby.

Plaintiff claims that because of this dike the water now stands on his land for a greater length of time than it did before the dike was built, and that the water rises to a greater height and spreads out over land that did not overflow before the dike was built. The course that was pursued by the flood water of the river across defendant's land prior to the construction of defend-

ant's dike was the natural and usual means of escape for the flood waters of the river during the spring and summer freshets, and was a part of the natural drainage course at such times as the same was defined by this court in Thompson v. Andrews, 39 S. D. 477, 165 N. W. 9.

[1]   But it is the contention of respondent that the water does not rise to a higher level on appellant's land, nor spread over a greater area, nor stand there for a greater interval of time, now than it did before the dike was constructed.    Upon this question the trial court found as follows:

"(15)   That in times of flood the waters usually remain out of the river for about five days, that the said embankment does not cause more of plaintiff's lands to be overflowed by said flood waters than would be overflowed if said embankment were not there, but may make said flood waters some deeper; that the said embankment does not cause the said flood waters to remain on the said lands of plaintiff for a longer period of time than they would remain if said embankment were not there; that the said embankment has caused plaintiff no tangible or definite injury; and that he has not suffered and will not suffer in the future any substantial damage by reason of the maintenance of said embankment."

The different statements contained in this finding of fact are not consistent with each other.   Whether the embankment causes the water on plaintiff's land to rise to a higher level than it did before the embankment was there is by no means clear.   The water is bound to rise to the same level as the water in the river, but in no event can it rise any higher.   If the embankment were not there, and the water when it reached a sufficient height had free passage across defendant's land, it is possible that it might not rise quite so high as it does with the embankment there, but it is very difficult, if not impossible, to ascertain the difference. But if it does rise higher or become "deeper," as said in said finding, it overflows more of plaintiff's land than it did before. This must necessarily be true unless the land rises perpendicularly from the water.   And it is also self-evident that it takes the water longer to drain off until it gets down to the level of defendant's land than it did before, because if the embankment were not there part of the water could run off over defendant's

land, while now it must all run back through the ditch and slough into the river.

[2] Upon the question of plaintiff's possible damage the trial court made the following finding of fact:

"(16) That the said embankment is beneficial to defendant in that it permits him in times of high flood to save his crops from destruction by flood waters, after the crops on plaintiff's lands have been completely destroyed, and at a time when plaintiff has suffered all the damage he can sustain by reason of his said land being flooded by the waters of the Sioux river."

We believe this finding is warranted by the evidence. As said above, the water may drain off some faster down to a certain level if the dike were not there, but it is plain from the evidence that practically all of plaintiff's land that overflows at any time is still overflowed after the water reaches the level of defendant's land. It is undoubtedly true that the dike is of great benefit to defendant, but the damage, if any, to plaintiff if not sufficient to warrant a mandatory injunction. In view of finding 16 it becomes unnecessary for us to consider the contention of defendant that the "common enemy" doctrine applies to the flood waters of rivers, even though, as held by this court in Thompson v. Andrews, supra, it does not apply, in this state, to surface waters.

The judgment and order appealed from are affirmed.